Gottlieb Eyerman, Appellant, *v.* Henry Blakesley et
al., Respondents.

March 13, 1883.

1. Special Tax-Bills. — A special tax-bill made out against a lot in the city
of St. Louis for its proportionate share of the cost of the street
improvement, is not void because the work was not let out in one
entire contract. Bakewell, J., dissenting.

2. ―― Official Succession. — Where a tax-bill for work actually done is
void for informality, and it afterwards becomes the duty of another
officer to issue tax-bills, he may issue a valid tax-bill in place of the void
one.

Appeal from the St. Louis Circuit Court, Boyle, J.
*Reversed and remanded.*

George A. Castleman, for the appellant.

Edmond A. B. Garesché, for the respondents.

Thompson, J., delivered the opinion of the court.

This is an action upon eleven special tax-bills issued to
the plaintiff by the president of the board of public im-
provements of the city of St. Louis. A case relating to
the same subject-matter, between the same parties, was
before this court at a former term, and decided adversely
to the plaintiff. This court there held that the tax-bill
there sued on was void for two reasons: 1. Because the
entire work required to be done under one ordinance, the
improvement of Lynch Street from Second Carondelet Ave-
nue to the Gravois Road, had been by the city engineer let
in three distinct contracts. 2. Because the bill was made
out against eleven lots as an aggregate tract, whereas there
should have been a bill against each lot separately. With
this decision against him the plaintiff seems to have cast
about him to see whether he could procure anything to be
done which would avoid its consequences, and enable him
to get the money which he had earned. Since his original

bill was made out and certified by the city engineer, the scheme and charter had gone into effect; the city had passed under a new municipal government, and the duties of the city engineer of the former government had been devolved upon the president of the board of public improvements.   On the plaintiff's application, the latter officer made out and certified for him eleven distinct tax-bills, one against each of the eleven lots, charging each lot with its proportion of the cost of the entire work done under three contracts ; that is, charging each lot with its proportion of the cost of the entire improvement.   There is no question that the result which will be reached if these bills are held valid, will be precisely the result which would have been reached if the work had been let under one contract, and if a separate bill had been made out against each lot by the city engineer then in office.

The circuit court, trying the case without a jury, gave the following declarations of law, which drove the plaintiff to a non-suit : —

1.  " The court declares the law to be, that ordinance No. 9391, given in evidence by defendant, fixes the extent of the work to be done on Lynch Street, to be the grading, curbing, guttering, macadamizing and cross-walks on said Lynch Street, from Second Carondelet Avenue to the Gravois Road ; and the city engineer of the city of St. Louis had no authority to make contract 3301, given in evidence by the defendant, or any other contract, except for the whole work as provided for in said ordinance 9391, from Second Carondelet Avenue to Gravois Road."

2.  " The court declares the law to be that, inasmuch as it is shown by the evidence that the work mentioned in the petition and in the special tax-bills sued upon herein, was done and fully completed prior to October 15, 1875, and that on or before said date, city engineer of the city of St. Louis computed the cost of said work, the said special

tax-bills herein sued upon, cannot be considered or received as evidence that the work and material charged in such bills have been furnished, or of the execution of said work, or of the correctness of the rates or prices or amounts thereof, or of the liability of the persons named therein as owners of the land, to pay the same; and as there is no other evidence of these matters, other than the said tax-bills, the judgment must be for the defendant."

1. The first declaration of law thus given is in strict conformity with what was held by this court in the case between the same parties, which was here before (8 Mo. App. 311); and we have now to say whether we shall adhere to that decision in its full extent. The more recent case of *Kemper* v. *King* (11 Mo. App. 116), brought us face to face with the difficulties which might arise from the ruling that the city engineer has no power to subdivide a piece of work and let it out in distinct contracts. The testimony in the present case suggests another ground for doubting the propriety of that decision. A witness familiar with this class of city work, formerly a clerk in the city engineer's office, testifies distinctly that, where the work can be subdivided into small contracts, competition is increased, and the city engineer is able to let the work out at lower prices than where he is obliged to call for bids for the entire work in a lump; and this looks entirely reasonable. In a large city like St. Louis, it might be expedient for the council to order a very extensive improvement, such as the paving of a street three or four miles long. A rule which would oblige the city engineer, or other contracting officer, to let this work out in one entire contract, would place the city at the mercy of the large contractors, who, by combining, would be able to exact such terms as they might choose. It appears that the work embraced in these bills does not include excavating or filling, but it is merely such work as is known by the terms "curbing," "macadamizing," "guttering," "cross-walking," etc.;

and it was conceded in the opinion of Judge HAYDEN, in the case between these parties in 8 Missouri Appeals, that the difference in many cases between the cost of work of this kind done on one section of a street, and that done on another section, would be slight.   It is thus plain that a rule which would compel the proper contracting officer of the city to let out every piece of work of this kind under a single contract, would work much greater injury to abutting property-owners than it would remedy.   Confining ourselves to what we are called upon to decide for the purposes of this case, we, therefore, hold that a tax-bill is not void from the mere fact that the work ordered to be done by the ordinance was not let in one entire contract, where the bill is made out for the proportionate cost of the entire work which the lot ought to bear, as is now done in this case.

2. This brings us to the point whether the present bills were certified by the proper officer.   It has been laid down by the supreme court that where there is an *informality* — a mistake as to form — in a tax-bill, it may be corrected by the engineer who was in office at the time when the original bill was issued, although he is out of office at the time when the correction is made.   *Kiley* v. *Cranor*, 51 Mo. 541; *Kiley* v. *Oppenheimer*, 55 Mo. 374.   The court, in the former case, quote, with approval, a ruling of the supreme court of New Hampshire, to the effect that amendments in the proceedings of town officers must be made by the persons who were in office when the proceedings were had, and that it is not necessary that such persons should be in office at the time of making the amendments.   *Gibson* v. *Bailey*, 9 N. H. 168.   It may be observed that the weight of judicial opinion seems to be decidedly against the propriety of allowing town officers to make amendments of the town records after they have gone out of office.   See Dill. on Mun. Corp. (2d ed.), sect. 232, note 3.   But, however this may be, what the supreme court ruled was merely that *formal* amendments may be thus made.   That

is not the case here. Here the original tax-bill was *void*, because it was made out against eleven lots in a mass as one tract. Being void, when the plaintiff sought to have new bills made out, his case stood precisely as though no bills had ever been made out; for a void act is the same as no act at all. Could the city engineer, out of office, no longer under the disciplinary power of his official superiors,— his sureties, if he was under bond, no longer liable for his acts, — go back into office and do an original act which he had omitted to do while in office? Could any official do this in the absence of some statute enabling him to do it? Could a discharged agent bind his principal in this way? That such a thing cannot be done is too plain for argument.

Then the plaintiff finds himself in this situation : He has done work for the city under a valid contract; the city, by the terms of the contract and the law, is under an obliga tion to give him valid tax-bills, certified by its engineer, against each lot abutting on the street, along the line of the work which he has done. In the meantime, a change takes place in the city government. The old charter is abrogated and a new one is adopted. The officer who ought to have executed and delivered to him these tax-bills in pursuance of the contract which he has with the city, goes out of of- fice; the office itself by name is discontinued, and the duties which were devolved upon its incumbent are now devolved upon another officer of the new corporation. Has this change abrogated the contract between him and the city? It is a general rule of law relating to municipal corporations that, when such a corporation reorganizes un- der a new charter, the new corporation succeeds to the ob- ligations and liabilities of the corporation which existed under the preceding charter. 1 Dill. on Mun. Corp. (2d ed.), sect. 52. It was not intended that the scheme and charter should have the effect of annulling any rights which had been acquired under the old charter; for this instrument contains the following provision : "All ordinances in force

at the time this scheme and charter go into effect, not in-
consistent therewith, shall remain in full force until altered
or repealed by the assembly ; and all rights, actions, prose-
cutions, and contracts of the city, not inconsistent there-
with, shall continue to be valid as if this scheme and charter
had not been adopted.'' Art. XVI., sect. 1. The municipal
corporation which came into existence with the adoption of
the scheme and charter was, therefore, the same person in
law as the corporation with which the plaintiff had made
the contract for doing the work in question. The city hav-
ing failed to execute this contract by its proper officer at
the time, by giving to this plaintiff properly certified and
valid tax-bills, was bound to execute it on his demand by
its officer in office, when the demand was made, upon whom
the duty of executing such contracts had been devolved by
the new charter. This officer was the president of the
board of public improvements.

This reasoning disposes of the contention by the re-
spondents' counsel that the tax-bills certified by the presi-
dent of the board of public improvements are not *prima
facie* evidence that the work and the material charged for
in such bill have been furnished, of the execution of the
work, and correctness of the rates, or prices, the amount
thereof, and of the liability of the person therein named as
owner of the land to pay the same, except where such tax-
bills are for work done under the new charter. The old
charter made tax-bills so certified by the city engineer
*prima facie* evidence of the facts above stated. If we are
right in holding that the president of the board of public
improvements had power as the successor of the city engi-
neer, and the custodian of the records of his office, to make
out and certify these bills, we must give to them the same
effect as evidence which they would have had if made out
by the city engineer. The new charter devolves the same
duty upon the president of the board of public improve-
ments and contains the same provisions as to the facts of

which tax-bills issued by him shall be *prima facie* evidence. These provisions (Art. IV., sect. 41 ; Art. VI., sects. 24, 25) no doubt contemplated tax-bills for work ordered by the municipal assembly, which is called into existence by the new charter, and contracted for in compliance with the terms of the new charter. But in order to give effect to the provision of section 1, Article XVI., above quoted, as well as the settled principle of law that changes in corporate charters do not abrogate existing rights, it is necessary to imply in the officers under the new charter, who succeeded to the official records and to the same duties as those which were performed by the officers under the old charter, the power to do whatever is necessary to close up the business left unfinished by their predecessors, and to preserve inviolate the contracts of the city. Such a power must be implied from necessity, and to prevent a failure of justice. If this were not so, it would be easy for a municipal corporation to get rid of performing its unexecuted contracts by procuring a new charter and leaving vacant *eo nomine* the offices, by the hands of whose incumbents those duties were to be performed.

Entertaining these views, we reverse the judgment of the circuit court, and remand the cause. Judge LEWIS concurs, and files a separate opinion ; Judge BAKEWELL dissents.

Separate opinion by LEWIS, P. J.

I do not think it is necessary to overrule the decision of this court in *Eyerman* v. *Hardy* (8 Mo. App. 311), nor do I think that the conclusion reached by the majority in the present case has that effect. The vital point determined in that case was, that "the city engineer has no power to let out the work of improving a street between two given points in sections, *and* to compute the cost thereof in sections, instead of as an entirety." A rule which forbids the concurrence of two distinct acts, does not necessarily forbid either one, when separated from the other. It was shown

by the learned judge, in the case referred to, that, to compute the cost of an entire work in sections, showing different estimates, would work an injustice to the property-holder, who ought in no case to be held liable for more than a ratio of the entire cost, to be determined by the number of his lineal feet fronting upon a part of the improvement. The whole scope of the opinion is directed against this injustice, which is treated simply as a consequence of the separate lettings, as they appeared in that case. But I cannot find in that able opinion any reasoning which would forbid separate lettings, when so made and carried out as to involve no such consequences of injustice to the property-owner. A hundred contracts will no more affect the owner's rights than would a single one, provided that the cost to him is estimated by its due proportion to the cost of the whole improvement. Nothing in the statute law or the city charter prohibits, in terms, the letting of an entire improvement in several contracts. For a court to say that this shall not be done, even when no lawful right or known legal rule is violated, and no injustice is known to result, or even to be possible, as clearly appears to be the fact in the case before us, would present to my mind an instance of judicial law-making, rather than of interpretation of the law as it stands. I concur in the reversal.

Dissenting opinion by BAKEWELL, J.

I cannot see that the city engineer has any authority, express or implied, to let this work out in sections. I consider that I have nothing to do with the question whether he ought to have this power or not. I concurred in *Eyerman* v. *Hardy* (8 Mo. App. 311). That case was very carefully considered, and has been followed by this court in subsequent cases. I do not think that it ought to be disturbed.

I concur in what is said in the opinion of the court in this case as to the power of the president of the board of

improvements to certify to the tax-bill. The original tax-bill was void. The contractor was entitled to his tax-bill, and the president of the board of improvements was the proper officer to issue it, and has all the necessary data before him by virtue of his office.

The judgment should, in my opinion, be affirmed.