# THE STATE ex rel. SKRAINKA CONSTRUCTION COMPANY v. CITY OF ST. LOUIS et al.

**In Banc, May 9, 1908.**

1. **CHARTER PROVISIONS: Assessment of Lots Full Length and Half Way: Constitutional.** Even if the charter of St. Louis permitted some lots abutting on the improved streets to be assessed half way of their depth, and others in the same subdivision and bearing the same relation to the improvement to be assessed their full depth, it would not, on that account, be unconstitutional.

2. **MANDAMUS: To Cancel Tax Bills.** A mandamus, brought in the Supreme Court, to cancel tax bills issued in payment of a public improvement against a district improperly defined, and to compel the issuance of new tax bills against one properly defined, is an appropriate remedy.

3. **CHARTER: Improvement of Street: Assessment of District: Lot: Subdivisions: Plat.** The question in this case is how is a benefit assessment district in St. Louis for a street improvement to be bounded. The charter provides: "A line shall be drawn midway between the street to be improved and the next parallel or converging street on each side of the street to be improved, which line shall be the boundary of the district, except as hereinafter provided, viz.: If the property adjoining the street to be improved is divided into lots, the district line shall be drawn so as to include the entire depth of all lots fronting on the street to be improved. . . . The word 'lot' as used in this section shall be held to mean the lot as shown by the recorded plat, or if the owners of the lots have disregarded the lots as platted, and have treated two or more lots or fractions thereof as one lot, then the whole parcel of ground or lots so treated as one shall be regarded as a lot for the purposes hereof." The lots by the recorded plat extended from the improved street to the next parallel street. *Held,*

   1. The general plan of establishing the district is to bound it by a line midway between the street to be improved and the next parallel street.

   2. Where the lot as platted is owned by one person and all is used together, with the chief improvements fronting the street to be improved, the district line should be so drawn as to include the whole of such lot; that is, the district's boundary line should be the next parallel street.

3. The word "lot" as used in the charter does not necessarily mean a lot as platted. · The charter expressly recognizes that a platted lot may be changed by use, and what can be done by use can be done by deed. And use or deed does away with platted lines for lots, and makes the segregated or consolidated parts independent lots for the purposes of assessment.

4. Where the owners of platted lots extending through from street to street have sold parts thereof to the midway line, the parts fronting on the street to be improved should be included in the assessment district, and the balance excluded.

## Mandamus.

PEREMPTORY WRIT DENIED.

*Walther & Muench* for relator.

(1) It was the intention of the framers of the amended charter of St. Louis that the boundary of the taxing district should be placed at a line midway between the street improved and the next parallel street, wherever that is practicable. Collier v. Western P. & S. Co., 180 Mo. 283. (2) The exception that if the property adjoining the street to be improved is divided into lots the district shall be so drawn as to include the entire depth of all lots fronting on the street to be improved, was not intended to apply where the lot fronting the improvement has a depth through to the next parallel street. (3) If the exception in the charter does apply to platted lots fronting the improvement and extending to the next parallel street, then it must apply to all such lots fronting the improvement. The division of a platted lot in ownership or usage cannot except it from the charter definition of the term "lot." State ex rel. v. City, 183 Mo. 230; Collier v. Western P. & S. Co., 180 Mo. 283. (4) The intention of the framers of the law should be carried out, even though contrary to the strict letter of the law, and where a single section would conflict with the entire scope or manifest intent

of the law, the literal construction of such section should be departed from in an effort to harmonize it with the other provisions of the act. Cole v. Skrainka, 105 Mo. 303; State ex rel. v. Heman, 70 Mo. 441; State ex rel. v. Talty, 166 Mo. 529. (5) It is proper to consider the effect and consequences of a proposed interpretation of law to ascertain what is probably its true intent. Bowers v. Smith, 111 Mo. 45; Lamar v. City, 128 Mo. 188; Chouteau v. Railroad, 122 Mo. 375; State ex rel. v. Slover, 126 Mo. 652. (6) Taxation, whether general or special, must be uniform. Independence v. Gates, 110 Mo. 374; K. C. Grading Co. v. Holden, 32 Mo. App. 490; Halpin v. Campbell, 71 Mo. 493. (7) Where a special tax results in inequality or injustice, every question of doubtful construction must be resolved against the tax. Halpin v. Campbell, 71 Mo. 493; Verdin v. City, 131 Mo. 26.

*Charles W. Bates* and *David Goldsmith* for respondents.

(1) The first question is whether the lots which were not changed by sale or use after they were platted, but which still remained as originally platted, and which admittedly fronted on Lee avenue, were properly assessed for their entire depth. This question is disposed of by the express provisions of the charter and the direct adjudications of this court. Lots in use as originally platted must be assessed to their entire depth. Collier v. Western, etc., Co., 180 Mo. 362; Meier v. St. Louis, 180 Mo. 391; State ex rel. v. St. Louis, 183 Mo. 230. (2) Lots which, as originally platted, and also as now used, extend beyond the midway line, must be assessed for their entire depth. Collier v. Western, etc., Co., 180 Mo. 386; Asphalt Co. v. Haeussler, 100 S. W. 14. (3) Assessments for local improvements must be made against each lot separately. Fowler v. St. Joseph, 37 Mo. 238; Kemper v. King, 11 Mo. App. 126;

211 Sup.—38

Wolfort v. St. Louis, 115 Mo. 144. (4) The charter definition constitutes merely a prima-facie definition, and the word "lot" as used in the charter provision under consideration must be interpreted according to the ordinary definition of the word; and in the definition and application of the word the use to which land is put overrides divisional lines established by plats. Fitzgerald v. Thomas, 61 Mo. 500; Chouteau v. Thompson, 2 Ohio St. 123; Chester v. Eyre, 181 Pa. St. 642; Lax v. Peterson, 42 Minn. 214; Pitz v. Killingsworth, 20 Or. 432; Bohan v. Ozaukee Co., 88 Wis. 498.

GRAVES, J.—This is an original action by mandamus, the general purpose of which is to require the city of St. Louis, the Board of Public Improvements of said city and the City Comptroller, to cancel certain tax bills which were issued to relator in payment of work done and material furnished in the reconstruction of a portion of Lee avenue in said city. The alternative writ was issued and return duly made, and the questions involved are ones which appear from these pleadings.

From the alternative writ it appears that the relator was the contractor for reconstructing a portion of Lee avenue in the city of St. Louis. That an ordinance authorizing said improvement had been duly passed, which ordinance is fully set out in the writ, but it is not necessary to set it out here, as the validity thereof is unquestioned. That relator had done the work and tax bills to pay therefor had been issued, but relator avers that the taxing district was not properly laid out and defined, and that thereby such tax bills are void, and he desires the cancellation thereof, and the reissuance of the same after a properly defined district has been made. The charges as to the illegality of the taxing district are couched in this language:

"That the assessment district for said work, upon which said special tax bills were issued, was not estab-

lished in accordance with the provisions of the charter of said city and amendment thereof, in the following respects:

"That the total cost of said improvement of Lee avenue under the said ordinance amounted to $35,-026.19, of which one-fourth, to-wit, $8,756.57, has been assessed and made chargeable against the property fronting on the improvement on Lee avenue and three-fourths of said amount, to-wit, $26,269.62, has been assessed and made chargeable against the area of a district erroneously established by the said city and which district, so erroneously established, contains an area of 1,267,936 square feet. That the said assessment district (upon which said special tax bills were issued) was not established in accordance with the provisions of the charter of the said city of St. Louis in this:

"1. The property of the north side of said Lee avenue, throughout the length of said improvement, is situated in the McCune and Vandeventer addition to St. Louis, a plat of which subdivision was duly and legally certified and filed in the office of the Recorder of Deeds of the city of St. Louis on the 4th day of June, 1867, and is recorded in the office of the said Recorder of Deeds in plat book No. 7 at page 61. That in said recorded plat of said subdivision, the street bounding the subdivision on the south is designated as 'Moore' street. That subsequently by an ordinance of the said city of St. Louis, duly enacted and approved, the name of said street was changed to Lee avenue and is the street improved as aforesaid. That the names of the streets designated in said plat as 'Bryan,' 'O'Fallon' and 'Carolina' avenues have since, by duly enacted and approved ordinances of the city of St. Louis, been changed to 'Prairie,' 'Warne' and 'Fair' avenues, respectively. That block number one of said subdivision is also known as City Block number 2488, block number two as City Block number 3305, block number three as City blocks numbered 3577 and 3578, block

number four as City Block number 3576 and block number five as City Block number 3575. That the lots in blocks three, four and five of said subdivision (City blocks 3578, 3577, 3576, 3575) as laid out on said plat, front on said Moore street (now Lee avenue) and have a depth southwardly of 217.17 feet. That in said plat the lots in block three of said addition are bounded on the north by a strip of land eight feet and four inches in width, and the lots in blocks four and five of said addition by a strip of land one foot wide, the said strip being designated upon the said plat and in the certificate appended thereto as being reserved for public use for street purposes whenever the owners of the property adjoining the strip on the north should dedicate an additional strip thirty feet in width off the south line of their property, the whole to be used as a public street, and the said reserved strip to be then dedicated for street purposes. That the adjoining property on the north of the said blocks of said subdivision was thereafter dedicated for a street, and by ordinance of said city of St. Louis, duly enacted and approved, a public street having a width of sixty feet, and known as Penrose street, was opened and established along the northern boundary of the lots in said subdivision, and that after the establishment of said street said lots as platted ran from Lee avenue to Penrose street. That the said Penrose street is the next parallel street north of said Lee avenue, the street improved. A copy of said recorded plat of said subdivision is hereto attached, marked Exhibit A, and made part hereof. That in the said blocks three, four and five of said subdivision, otherwise known as City blocks numbers 3578, 3577, 3576 and 3575, respectively, the said taxing district line was placed at the northern boundary line of lots four, five, six, twelve, thirteen and western half of lot eleven in City block 3575, lots three, four, seven, eight, twelve and western half of lot eleven in City block 3576, and lots three, four, five, eight, nine, thirteen, fifteen, six-

teen, eighteen and twenty in blocks 3577 and 3578, said northern boundary line of said lots being the southern line of said Penrose street; that is to say, the said lots have been assessed their entire depth from Lee avenue, the said improved street, to Penrose street, the next parallel street to the north. That the remaining lots in said blocks (except lots one and two in block 3578) have been assessed from Lee avenue to a line midway between said Lee avenue and said Penrose street. That all of said lots in the said blocks are in the same relative position to the street improved. That the said lots which have been assessed their full depth are either vacant or improved by dwelling buildings erected on the Lee avenue front, and have no improvements on Penrose street other than sheds, stables or other outbuildings used in connection with the dwelling buildings erected on Lee avenue. All of the remaining lots in the said blocks of said subdivision, which have been assessed only to the midway line (except lot five in block 3576 and lot three in block 3578) are improved by a dwelling building fronting on Lee avenue and another such building fronting on Penrose street, and half of the lot, as platted, used in connection with each building, or the ownership of the lot has been divided by a sale of half of the lot, that is, one person owns part of a lot with a Lee avenue front by a depth to the midway line and another person owns the remainder of the lot.

"2. On the south side of Lee avenue, the street improved, City blocks 1928, 1929 and 3304 are located in Hull's subdivision, a plat of which subdivision was properly certified and duly filed in the office of Recorder of Deeds of the city of St. Louis in plat book four, page seventy. That in block 1927, lots 38, 39, 40 and 41 and in block 3304, lots 27, 28, 29 and 30 as platted, have a depth of 272 feet and 7-8 inches from Lee avenue to an alley running east and west in said blocks. That the next parallel street south of Lee avenue is Kossuth avenue, and the midway line between Lee avenue and

Kossuth avenue in the said blocks 1929 and 3304 is 213 feet south from Lee avenue. That the said lots 38, 39, 40 and 41 of said block 1929 were not assessed their full depth, but were only assessed to the line midway between Lee avenue and Kossuth avenue. That the said lots 38, 39, 40 and 41 of block 1929 are owned by John Mengerson to a depth of 125 feet from Lee avenue and the remainder of said lots from said Mengerson's southwardly to the alley, is owned by William Blase and has a depth of 147 feet and 7-8 inches. In said block 3304, lots 28 and 27 are assessed their full depth as platted, but lots 29 and 30 of said block are assessed only to the line midway between said Lee avenue and Kossuth avenue. The last two mentioned lots, to a depth of 206 feet, are owned by George Griffiths, and the remainder of said lots running from Griffiths' southern boundary to the alley, are owned by James and Sarah Nelson.

"3. Lot five, in block 3576 and in the McCune and Vandeventer subdivision, has been assessed only to the midway line. The said lot is improved by a dwelling on Lee avenue, but has no dwelling or outbuilding of any kind on Penrose street. The outbuildings and fence used in connection with the said building fronting on Lee avenue are located at about the middle of the depth of said lot, and that only so much of said lot as lies between said Lee avenue and said midway line is used as the lot for said building.

"Petitioner further states that it is the intention and meaning of the provisions of said charter of the city of St. Louis to have the district line fixed midway between the street improved and the next parallel or converging street, if there be such parallel or converging street; and that it is not the intention or meaning of the provisions of said charter that lots fronting upon the street improved, and which have a depth extending to the next parallel or converging street, shall be assessed their entire depth, but that by the provisions of

said charter it was intended to have the entire depth of a lot, fronting upon the street, assessed, only when such lot extended beyond the midway line a short distance, and did not extend to the next parallel or converging street. Petitioner further states that the district line in the said City blocks 3575, 3577 and 3578 should in pursuance to the provisions of said charter have been placed midway between Lee avenue and Penrose street, and that the said district, as defined by said officials of the city of St. Louis and upon which the said tax bills are based, is erroneous in that the lots hereinbefore particularly mentioned and situated in the said blocks, have been assessed their full depth instead of to the midway line; or, if the correct meaning of the said provisions of said amended charter of the city of St. Louis be that any lot in fronting upon the street improved shall be assessed its full depth, even though it extends to the next parallel or converging street, then the said district, as defined by said officials of city of St. Louis, and upon which said tax bills are based, is erroneous in that the lots hereinbefore particularly designated situated in said City blocks 3575, 3576, 3577 and 3578 in the McCune and Vandeventer addition, have not been assessed their entire depth, but have been assessed only to a line midway between Lee avenue and Penrose street. A plat of said district as defined by said city is hereto attached and marked 'Exhibit B' and made part hereof.

"Petitioner further states that the said district has been erroneously defined in that the lots in blocks 1929 and 3304 hereinbefore particularly mentioned, have not been assessed their entire depth, although said lots extend beyond the midway line, do not extend to the next parallel street and are lots shown by a recorded plat of Hull's subdivision."

Appertaining to these allegations, the return made says:

"Respondents deny that the assessment was made contrary to the charter provisions of the city of St. Louis, and on the contrary, allege that the assessment was made in strict conformity to said charter provisions, and that the tax bills made and issued to the contractor are legal and valid tax bills.

"Respondents further admit the original subdivision and platting of the property as alleged in said writ, and also admit the change of names of the streets as stated in said writ, and also admit that the block numbers of said McCune and Vandeventer addition to St. Louis became the respective City Block numbers as stated in said writ.

"Respondents admit and allege that prior to any proceedings being taken for the improvement of Lee avenue Penrose street, the next street north of Lee avenue, was duly established and opened as a public street of the city.

"The respondents further admit the numbering of lots in said City blocks as stated in the alternative writ, and also admit the relative situation of said lots as originally platted with respect to Lee avenue and Penrose street as stated in said writ and shown on Plat B filed therewith. Respondents allege that subsequent to the platting of said land and prior to any proceedings being taken for the improvement of Lee avenue some of said lots were subdivided, in the manner hereinafter stated, thus making two or more lots out of what was originally one platted lot, and that special tax bills were issued in payment of the improvement of Lee avenue as aforesaid, against each of the lots fronting upon said Lee avenue to the entire depth of such lots in the proportion required by the charter provisions of the city of St. Louis, namely, one-fourth of the cost of the improvement being assessed upon all lots fronting upon Lee avenue in proportion to the frontage and three-fourths of the cost of said improvement being assessed in proportion to the area on all lots lying between said

Lee avenue and the midway line between Lee avenue and the next parallel street, extending, however, to the entire lot where such lot fronting on Lee avenue extends beyond the midway line.

"Respondents further state that where said original lots were subdivided by the owners thereof, making more than one lot out of such original lots respectively, the city in issuing said special tax bills recognized said subdivision by such owners and recognized the creation by such owners of new lots and such new lots being taxed as lots. That in a number of instances, as shown by the plat filed with the petition in this cause, the ownership of the lots as originally platted was divided, one proprietor owning one-half of the original lot running through from Lee avenue to Penrose street, or owning one-half of such original lots, such one-half running back to the midway line between Penrose street and Lee avenue, and in some cases said lots were divided in ownership by more minute subdivisions. In some cases as shown by said plat while the same person owns the entire lot he had divided the same by his improvements and fences thereon, in which case where such lots fronted Lee avenue they are included in the assessment to the midway line, because all of that portion of the original lot was by such use segregated from the balance of the lot and used as a part of the premises of said fronting, while the one-half of lot beyond the midway line and fronting on Penrose street was thus disconnected from the one-half fronting on Lee avenue, and in making the assessment the city merely recognized the establishment of new lots by the proprietors and in all cases followed the lots as platted in making the assessment unless the owners had subdivided original lots and made more than one lot in fact out of the original platted lot.

"Respondents admit that in locating the taxing district line as described in the charter, the city through its proper official, placed the same in accordance with

existing lot boundaries as above stated as shown by said plat and as stated in said writ except lot 12 in the City Block 3576 was assessed only to the midway line between Lee and Penrose. The reason for assessing this lot only to the midway line being that one-half of said lot twelve fronting on Lee avenue is and was owned by one party, and the half of said lot fronting on Penrose street is and was owned by another and different party, each one of which owners uses his respective lot for his own separate purpose, and except that entire lot 11 in the City Block 3575 was assessed, the reason being that said lot was owned by one person who had improvements fronting on Lee avenue and who used the entire lot back to Penrose as a part of a dwelling house premises.

"Respondents further admit that lot 5 in City Block 3576 was assessed only to the midway line between Lee avenue and Penrose street, the facts being that the west half of said lot 5 is and was owned by one Russell, who had and has a house thereon fronting Lee avenue, using the lot half back to Penrose street as a part of his dwelling house premises, which dwelling house premises are separated from the Penrose end of said lot by a fence placed at the midway line. The east half of said lot 5 is divided in ownership, the portion fronting on Lee avenue is owned by one Herwig who has a dwelling house fronting Lee avenue. The premises used in connection with which runs back to a fence which is placed upon a line midway between Lee avenue and Penrose street, and the portion of said east half of said lot fronting on Penrose street is owned by one Metz, who has a dwelling house fronting Penrose street, and whose dwelling house premises extend from Penrose street back to the midway line between Lee avenue and Penrose street. Said lot 5 being thus divided by its owners and proprietors, was assessed in accordance with said division, the city recognizing as separate lots

the portion of said original platted lot that had been made separate lots by the owners thereof.''

As to all the other allegations the return specifically admits the allegations of the alternative writ.

As said, in the record before us we have only the alternative writ and the return. Under such circumstances the case was submitted on briefs, which seem to fully recognize the facts alleged in the return. At any rate there being no denial of the averments made in the return the allegations therein must be taken as true for the purposes of this case.

Such are the facts for our consideration.

The relator makes a fair summary of his contentions in this language:

''(1) The taxing district as established is not in acordance with the charter, because some of the lots in a platted subdivision which front the improvement have been assessed only to the midway line, and others their full depth to the next parallel street.

''(2) That the proper interpretation of the charter of the city of St. Louis requires the placing of the district boundary at a line midway between the improved street and the next parallel or converging street, where the platted lots fronting the improvement extend through to such parallel or converging street.

''(3) If, however, the exception in the charter, that a lot fronting the improvement shall be assessed its full depth, applies in such a case, then all of the platted lots should be so assessed, irrespective of the use that is being made of them.

''(4) That if the charter should be construed as permitting some of these lots to be assessed only half way, and others, in the same subdivision and bearing exactly the same relation to the improvement, to be assessed their full depth, it would be unconstitutional.''

I. Of these contentions we take the last first. It might suffice to say that the constitutional question thus

injected is not raised in the pleadings. However, the constitutionality of the act has been before us and decided adversely to claim of relator. [Meier v. St. Louis, 180 Mo. 391; Collier Est. v. Western Pav. & Supply Co., 180 Mo. 362; Fruin-Bambrick Construction Co. v. St. Louis Shovel Co., *ante*, p. 524.]

With this the constitutional question will be dismissed. The constitutionality of this charter provision has received due consideration by this court, and if there be a serious Federal question, our action is subject to the proper review.

II. The remedy here sought, that of cancelling the tax bills upon a district improperly defined, and issuing new ones upon one properly defined, has been fully recognized by this court. [State ex rel. Paving Co. v. St. Louis, 183 Mo. 230.]

The first question for determination is whether or not, where a street is being improved, lots fronting on such street and running through to the next parallel street, should be included in full or only to the midway line. It will be observed that a number of the lots as originally platted run through from Lee avenue to Penrose street. It will also be observed that since the original platting of the lots, some of them have been divided by deed, so that the half fronting upon Lee avenue is owned and used by one party and the half fronting upon Penrose street is owned and used by another party. In some instances the same owner has the entire lot, but by use has divided it at the midway line and has improved and is using the two halves separately. But first, where the lot as platted is owned by one party and all used together, with the chief improvements in Lee avenue, how should the district line be drawn as to such lot? Should the district line include the whole lot, or should it stop with the midway line? If the former, of course this would carry the district line to the next parallel street, whenever we had a lot of this character. In

other words, what does the charter mean in a case of this character?

The charter provision reads: "A line shall be drawn midway between the street to be improved and the next parallel or converging street on either side of the street to be improved, which line shall be the boundary of the district, except as hereinafter provided, viz.: If the property adjoining the street to be improved is divided into lots, the district line shall be so drawn as to include the entire depth of all lots fronting on the street to be improved. If the line drawn midway, as above described, would divide any lot lengthwise, and the average distance from the midway line so drawn to the nearest boundary line of the lot is less than 25 feet, the district line shall in such case diverge to and follow the said nearer boundary line."

From this it will be observed that the general plan of establishing a district is to establish a midway line between the street to be improved and the next parallel or converging street. This general plan appears from the first clause, but to this plan there are certain exceptions. The exception covering this point is fully set out, and is to the effect that the whole of a lot which fronts on the street to be improved, must be taken into the district, though the district line would thereby be changed from the midway line first mentioned. Relator would have us write into the charter an exception which is not there, i. e., in the event that the lots extended through to the next parallel street, then only half of the lot should be included. This we do not feel should be done. Had the people adopting the charter desired the additional exception, it would have been made. Nor is it unreasonable, as might be urged, that in the event the other abutting street is improved the lot would be again assessed. Benefits are at the foundation of assessments of this character and a lot abutting two improved streets has its advantage over one adjoining but

one. At any rate there are no sufficient reasons to authorize this court to reconstruct, by interpretation, the charter of the city of St. Louis, and it will not be done. So that with the exceptions to be discussed later, we are of the opinion that such lots are properly included in the district.

III. The further contention is that inasmuch as in the formation of this particular taxing district, some of these lots running through from the street being improved to the next parallel street, were included in full, then all such lots, as originally platted, should have been so included, and for that reason the district has not been properly established. It will be observed from the return it stands admitted that in some instances the original owners of lots extending through from street to street, had sold parts thereof, and in such case in forming the district these parts were recognized as lots, and treated as independent lots. In this way if the original lot had been divided by sale and deed at the midway line, then only the half fronting on Lee avenue was taken, and the portion fronting on Penrose was left out. Relator contends that the word ''lot'' as used in the charter means a platted lot, and, therefore, either the half or the whole of all such lots should be taken. Relator's contention is based on the following charter provision:

''The word 'lot,' as used in this section, shall be held to mean the lot as shown by recorded plats of additions or subdivisions, but if there be no such recorded plat, or if the owners of property have disregarded the lines of lots as platted, and have treated two or more lots or fractions thereof as one lot, then the whole parcel of ground or lots so treated as one, shall be regarded as a lot for the purposes hereof.''

From this charter provision which undertakes to define the word ''lot,'' it by no means follows that a platted lot is always meant, but the latter clause ex-

pressly recognizes the changing of lots by use. What can be done by use can be done by deed. If by use or deed one lot may be made up of many lots, then by similar acts why can't several lots be made of one? To our mind the latter portion of the charter clause last quoted is authority for the recognition of the use of the lot, in determining what is the lot, when forming the district. Under this clause if one man purchased several lots, and used them all as one lot, thereby disregarding the platted lines, such use and treatment made the consolidated tract but one lot for the purpose of these assessments. The use and treatment does away with platted lines and lots. And in our judgment the use and treatment of a part only of such platted lot, would make such portion an independent lot for the purposes of such assessment. Suppose A and B own adjoining lots. A sells his lot to C and B sells one-half of his lot to C. In the course of time C improves the lot and one-half lot as one tract, and uses it for the one purpose; under the charter provision aforesaid the lot and the half lot so used must be considered as one lot. If so, what becomes of the remaining half lot belonging to B? By force of circumstances it necessarily becomes a lot within itself, for the purpose of these assessments. We, therefore, conclude that these original platted lots may be divided into one or more lots, either by deed, or by separate and distinct use, but where the lots run from street to street and have not been separated either by deed or distinct and separate use and treatment, it still remains a single lot and must be included in the taxing district. This is the reasonable construction to be given to these charter provisions. It was never contemplated that once a lot by reason of a plat, always a lot, notwithstanding the division thereof by later acts.

From this it follows that the peremptory writ should be denied, and it is so ordered.

All concur.