# J. C. LIKES, Appellant, v. CITY OF ROLLA, Respondent.

**Springfield Court of Appeals, April 14, 1915.**

1. **MUNICIPAL CORPORATIONS: Tax Bills: Power of City to Issue Corrected Ones.** Where a municipality has legally issued tax bills for the payment of a public improvement which are incorrect, it has power to issue corrected tax bills in their stead.

2. ———: ———: ———: ———. That the personnel of the city government has changed between the time of making a public improvement for which incorrect tax bills are issued and the time of demanding corrected tax bills, does not abrogate the power of the city to issue such corrected tax bills.

3. ———: ———: ———: Action Against City for Refusal to Issue Corrected Tax Bills. An action for damages against a city for refusal to issue corrected tax bills for a public improvement cannot be defeated on the ground that the issuance of such tax bills is a legislative act over which the courts have no control.

4. ———: ———: Refusal to Issue Corrected Tax Bills: Defense. Action against a city for damages for refusal to issue corrected tax bills. The city's position not having changed in any way, the fact that the contractor delayed bringing such action several years, is not a defense.

5. ———: Tax Bills: Refusal of City Officers to Issue Corrected Tax Bills: Remedy, Mandamus. Where tax bills for street paving, issued by a city, are defective and the city authorities refuse to issue corrected ones instead, but the city has not disabled

itself from so doing, the remedy of the contractor is by man-
damus to compel the issuance of such corrected tax bills and
he cannot maintain a suit for damages against the city because
of such refusal of the city officers. [Sec. 9403, R. S. 1909.]

Appeal from Phelps County Circuit Court.—*Hon.*
*L. B. Woodside,* Judge.

AFFIRMED.

*J. J. Crites* and *Barbour & McDavid* for appellant.

(1) The city is estopped to deny its liability un-
der the facts presented by this record. The same rule
that would apply to individuals will be applied to the
city in this case. Depot Co. v. St. Louis, 76 Mo. 396;
Stealey v. Kansas City, 179 Mo. 407; Edwards v. Kirk-
wood, 147 Mo. App. 616; Wilson v. Drainage District,
176 Mo. App. 497. (2) The board of aldermen alone,
by ordinance, has the power to levy the assessments
and authorize the issue of new tax bills to Mr. Likes
in lieu of those which are void, and it is their duty to
do so. Sec. 9364, R. S. 1909; Eyerman v. Blakesley,
13 Mo. App. 410; Vieths v. Planet Co., 64 Mo. App.
211; Fayette v. Rich, 122 Mo. App. 153; State ex rel.
v. St. Louis, 183 Mo. 235. (3) The issuance of a tax
bill that is void amounts to no tax bill at all and such
issue is a nullity. The correct assessment is the only
one made as it is the only legal one. Prendergast v.
Richard, 2 Mo. App. 194; Eyerman v. Blakesley, 13
Mo. App. 410-411; Paving Co. v. Harrisburg, 64 Fed.
283; Bank v. Portland, 24 Ore. 189, 33 Pac. 532. (4)
The fact that the personnel of officers and board of
aldermen of defendant city has changed since the work
was done by Mr. Likes is wholly immaterial. The city
continues to exist and is bound by its contracts until
they are fully performed. This is too plain for argu-
ment. Eyerman v. Blakesley, 13 Mo. App. 410; Paving
Co. v. Hayward, 248 Mo. 280. (5) The city, having

failed and refused to levy special assessments and issue special tax bills against the abutting property as required by its contract and charter, is itself liable in damages to Mr. Likes for its breach of contract, and the measure of damage is the contract price of the work with interest thereon from June 18, 1909. This is not a suit on the contract for the direct payment of money; it is not a suit to recover the amount of tax bills; it is a simple action for damages for a breach of a valid contract. Electric Co. v. Ft. Dodge, 115 Iowa, 568, 89 N. W. 7; Bank v. Portland, 24 Ore. 189, 33 Pac. 532; City of Mankato v. Paving Co., 142 Fed. 346-348; Denny v. Spokane, 79 Fed. 724; Paving Co. v. City of Denver, 72 Fed. 336; District of Columbia v. Lyons, 161 U. S. 200; Fisher v. St. Louis, 44 Mo. 482; Paving Co. v. Field, 134 Mo. App. 665-667; Paving Co. v. Hayward, 248 Mo. 287; Chambers v. St. Joseph, 33 Mo. App. 536; Ash and Gentry v. Independence, 79 Mo. App. 70; Steffen v. St. Louis, 135 Mo. 51; Simons v. City, 159 Fed. 307; Oster v. Jefferson City, 57 Mo. App. 485; Reilly v. Albany, 112 N. Y. 32; Paving Co. v. City of Harrisburg, 64 Fed. 283; Schofield v. Council Bluffs, 68 Iowa, 695, 28 N. W. 20.

*Frank H. Farris, Holmes & Holmes* and *Watson & Livingston* for respondent.

(1) A municipal corporation is not liable to one suffering injury in consequence of the nonexercise, or defective exercise of its public legislative powers. And one contracting with a city through its officers, is bound to take notice at his peril of their powers, and, also, of the legality of its ordinances. Keating v. The City of Kansas, 84 Mo. 418; Saxton v. City of St. Joseph, 60 Mo. 160; Kiley v. City of St. Joseph, 67 Mo. 491. (2) There can be no recovery against a city under a contract which exempts it from liability, and this is so, although by reason of the defective passage of its ordi-

nances by the city, the contractor failed to recover on the special tax bills. Keating v. The City of Kansas, 84 Mo. 419; Wheeler v. City of Poplar Bluff, 149 Mo. 46; Dalton v. Poplar Bluff, 173 Mo. 46; Oster v. City of Jefferson, 57 Mo. App. 494; Thornton v. City of Clinton, 148 Mo. 659; Dillon on Municipal Corporations (4 Ed.), sec. 481; Brady & Kirby v. St. Joseph, 84 Mo. App. 404; Carroll v. City of St. Louis, 5 Mo. App. 583; Moberly ex rel. v. Hassett, 127 Mo. App. 15. (3) Mandamus to cancel void tax bills issued in payment of public improvements, and to compel the issuance of new tax bills, is an appropriate remedy. State ex rel. v. St. Louis, 211 Mo. 591; State ex rel. v. Nerry, 105 Mo. App. 458; State ex rel. v. Noonan, 59 Mo. App. 524; State ex rel. v. Mayor, 58 Mo. App. 124; State ex rel. Strother v. Chase, 42 Mo. App. 343; State ex rel. Campbell v. Cramer, 96 Mo. 75; State ex rel. v. Chillicothe, 237 Mo. 486; State ex rel. v. St. Louis, 183 Mo. 235; Kiley v. City of St. Joseph, 67 Mo. 491; Moberly ex rel. v. Hassett, 127 Mo. App. 15.

STURGIS, J.—The facts in this case are not in dispute. The defendant is a city of the fourth class. It has the power to and did enter into a contract with this plaintiff to pave Eighth street in the defendant city. It is agreed that there are no infirmities in this contract or the proceedings had relative thereto up to the time the work was completed and tax bills issued. The plaintiff complied with the contract in every particular and paved the street in the manner and with the materials specified in the contract. The contract in question contains these provisions: It is also expressly agreed that the said party of the second part shall not be liable to pay directly or indirectly for said work or any part thereof except in special tax bills as hereinafter provided, and the party of the first part shall and does assume all risks as to the legality and illegality, validity or invalidity of said special tax bills,

and take the same without recourse against the city of Rolla, Missouri. The city of Rolla, Missouri, hereby agrees to pay to the said party of the first part for the above work when the same is fully completed according to this agreement, and the ordinances, plans and specifications of this work, and to the satisfaction and acceptance of the city engineer and street commissioner, at the following rates, namely: Two dollars and forty-five cents per square yard, in special tax bills *issued against the property liable for the cost* of the work, and deliver the same to the party of the first part according to the laws and ordinances of the said city, and the receipt thereof shall be in full of all claims and damages against the city on account of said work.''

On the completion and acceptance of the work done by plaintiff under this contract, the defendant city issued to him certain tax bills in payment of the same against various tracts of land fronting on the street in question, most of which have been paid. In this case plaintiff seeks to recover from defendant city the contract value of the paving done by him in front of four pieces of property on the street in question on the ground that he contracted to and did pave said street, for which work he was to receive his compensation in tax bills issued against the abutting property; that the said tax bills issued by the defendant city did not give a correct description of these pieces of property, but by mistake were issued against other and different property, a part of which does not abut on this street, whereby he was unable to enforce the collection thereof against the property properly charged with their payment; that subsequently plaintiff demanded of the officers of said defendant city that they issue corrected tax bills covering the property liable therefor; that said city declined to do so and on account of such refusal to issue additional and corrected tax bills for that portion of the work plaintiff claims that the city thereby

became responsible in damages for the amount due him
on account of said work.

The parties admit that each of the five lots de-
scribed in plaintiff's petition were on June 16, 1909,
when the work of paving was completed, liable for the
amounts named in plaintiff's petition respectively as
their proper share of the cost of the paving constructed
by plaintiff on the street in question under the con-
tract herein relied on. It is also admitted that the
defendant city at that time issued and delivered cer-
tain tax bills to the plaintiff for the various amounts
claimed to be due and made an honest effort in doing
so to cover by said tax bills the lots in question front-
ing on Eighth street, which were subject to assessment
and to be legally charged for said improvement; that
the defendant city issued and delivered such tax bills to
the plaintiff as payment for the improvements made by
him under said contract and that plaintiff received and
accepted the same and has since the eighteenth day of
June, 1909, had possession thereof; that, thereafter,
plaintiff filed suits and tried to enforce the lien of some
of said tax bills and did not make formal complaint
to the defendant city of any invalidity or legal defects
in the tax bills received by him until about May 1, 1914,
at which time there was a change in the personnel of
the mayor and board of aldermen of said city and that
defendant had a different set of officers than at the
time of making the contract and performance of the
same by plaintiff, and that their knowledge of said con-
tract and performance of same by plaintiff is only such
as appears from the records of said city; that plain-
tiff made claim to the defendant city in writing about
May 1, 1914, that the tax bills in question, thereto-
fore issued on June 18, 1909, were void and noncol-
lectable and demanded that defendant, through its
board of aldermen and other officers, issue other tax
bills against and correctly describing the property set

190MA10

out in plaintiff's petition and that the defendant city refused to do so. It is conceded that the tax bills issued by the city are invalid solely because of a misdescription of the property intended to be covered thereby and that if the city had issued tax bills covering the correct property liable for these special tax bills, the same would be valid and enforceable against such property.

The paramount question at issue is whether the defendant city is liable in damages for its refusal to issue corrected tax bills so as to cover and correctly describe the property liable therefor.

I. Preliminary to this it may be said that the power of the city to issue corrected tax bills under the circumstances now presented is not questioned and cannot be, as will be seen from the authorities cited by appellant, some of which will be noticed in this opinion. In insisting, as defendant does, that mandamus is the proper remedy, the defendant must concede that the defendant city by its officers has the power to take the preliminary steps and to issue corrected tax bills, otherwise it could not be coerced by mandamus to do so. Defendant cites a long list of cases showing that mandamus to cancel void tax bills on property improperly described and to compel the issuance of new tax bills against the property liable therefor is a proper remedy. [State ex rel. v. St. Louis, 211 Mo. 591, 604, 111 S. W. 89; State ex rel. v. Chillicothe, 237 Mo. 486, 141 S. W. 602; State ex rel. v. St. Louis, 183 Mo. 230, 235, 81 S. W. 1104.] The power and duty of a city to issue tax bills against property liable therefor is not exhausted by an abortive attempt to do so.

II. The fact that the personnel of the city government changes between the time of doing the work—the time when correct tax bills should be issued to the contractor—and the time of demanding corrected tax

bills cannot be material. This time might be short and in fact it often happens that such change takes place between the time the contract is made for doing such work and the time when any tax bills are due to be issued. It would be strange indeed if one set of city officers could make a valid contract on behalf of the city and a second set promptly repudiate the same by refusing to carry it out. In Eyerman v. Blakesley, 13 Mo. App. 407, there was a change both in the personnel of the city officers and in the city charter itself and the court held: "Here the original tax bill was *void,* because it was made out against eleven lots in a mass as one tract. Being void, when the plaintiff sought to have new bills made out, his case stood precisely as though no bills had ever been made out; for a void act is the same as no act at all. . . . The city having failed to execute this contract by its proper officer at the time, by giving to this plaintiff properly certified and valid tax bills, was bound to execute it on his demand by its officer in office, when the demand was made, upon whom the duty of executing such contracts had been devolved by the new charter." In Barber Pav. Co. v. Field, 134 Mo. App. 663, 111 S. W. 907, it was held that an amended tax bill could be issued by the officers of Kansas City in lieu of an incorrect tax bill issued by the officers of the city of Westport after the former city had absorbed the latter and assumed its powers and duties. To the same effect is Barber Pav. Co. v. Hayward, 248 Mo. 280, 154 S. W. 140.

III. Closely associated with this contention is the one that the issuance of new tax bills involves the passage of an ordinance authorizing same and levying a special tax on these lots, a legislative act, and that the legislative powers of a city cannot be thus indirectly controlled or coerced by the courts. If this defense should prevail it would be farreaching. It is inconsistent with defendant's position that mandamus is a

proper remedy. If the defendant city cannot be held liable in damages for its refusal to issue corrected tax bills, because the issuance of same involves legislative acts which cannot thus be *indirectly* controlled or coerced by the courts, the court certainly cannot *directly* by mandamus coerce and control such legislative acts. This leaves plaintiff without any remedy. So, too, if the issuance of corrected tax bills involves legislative powers which cannot be coerced by the courts, certainly the issuance of original tax bills is legislative and cannot be coerced or controlled either directly or indirectly by the courts. The result would be that every contractor who has done this kind of public improvement under a valid contract with the city to be paid for in tax bills is without any remedy if the city officers from caprice or whim conclude not to issue tax bills therefor. We need not go into the rationale of the numerous court rulings sustaining this power, though it will probably be found that the legislative power of a city which is wholly discretionary with it and cannot be controlled or coerced by the courts relates to whether, when and how the work shall be done and the making of contracts therefor rather than taking the steps necessary to carry out such contracts when lawfully made. [Turner Imp. Co. v. City of Des Moines, 136 N. W. 656, 658.] It is sufficient to say that the Supreme Court of this State has so often compelled city officials to take the necessary preliminary steps and issue tax bills that we need not justify such action. These cases will be found to include far more than the mere correction of clerical errors by city officials. They involve the issuance of entirely new tax bills and the passing of all orders and ordinances necessary therefor. In addition to the cases cited under the preceding paragraph, see, also State ex rel. v. Chillicothe, 237 Mo. 486, 141 S. W. 602, and Moberly ex rel. v. Hassett, 127 Mo. App. 11, 15, 106 S. W. 115.

IV.  The defense arising from the fact that there was considerable delay in demanding new tax bills and that plaintiff received and kept for a long time and tried to enforce by legal proceedings some of the incorrect tax bills first issued is fully answered in Saving Bank v. Ridge, 183 Mo. 506, 522, 82 S. W. 56, by the court there quoting with approval from a former decision of the Kansas City Court of Appeals in the same case.  The defendant had not at the time it refused to issue the corrected tax bills altered its position or done anything to its detriment.  The fault was that of the city rather than the contractor in failing to issue proper tax bills.  The city had an opportunity to correct the error at a time when it could have done so without any loss to itself.  [Ft. Dodge Electric L. & P. Co. v. City of Ft. Dodge, 89 N. W. 7, 10; Denny v. City of Spokane, 79 Fed. 719; Kearney v. City of Covington (1 Met.), 58 Ky. 339, 345; Reilly v. City of Albany, 112 N. Y. 30, 41, 19 N. E. 508.]

V.  We come now to the serious question in the case.  Is the city liable in damages for its refusal to issue the corrected tax bills and, herewith, is mandamus the only remedy?  By section 9403, Revised Statutes 1909, the cost of paving, macadamizing, etc., of streets, after same are brought to grade, "shall be levied as a special assessment upon all lots and pieces of ground upon either side of such street, avenue, alley or other highway, or part thereof or connection therewith, abutting thereon, along the distance improved, in proportion to the front foot."  The plaintiff's contract in this case provides that the city agrees to pay the plaintiff as consideration for the work when completed the price of two dollars and forty-five cents per square yard "in special tax bills *issued against the property liable for the cost.*"  The contractor agrees that the city shall not be liable to pay for said work,

directly or indirectly, except in special tax bills *as therein provided.*

There is a great wealth of authority holding that a city is liable under varying circumstances for a breach of its duty to issue proper tax bills for street improvement where the same is payable in such tax bills against the benefited property. These authorities are collected and to some extent discussed in 2 Dillon on Municipal Corporations (5 Ed.), sec. 827, and 2 Page & Jones on Taxation by Assessment, secs. 1508-1511, inclusive.

The great weight of authority sustains the general proposition that the city becomes liable in damages *ex delicto* for its neglect or refusal to issue tax bills where it has the power and it is its duty to do so and the tax bills would be valid when issued, notwithstanding statutory or contractual provisions to the effect that tax bills are to be accepted by the contractor in full payment of the work done or that the contractor assumes all risks as to the legality and validity of the tax bills or that in no event is the city to be held liable therefor. [2 Dillon on Municipal Corporations (5 Ed.), sec, 827, pages 1251, 1252, and cases cited; 2 Page & Jones on Taxation by Assessment, sec. 1508, and cases cited; Ft. Dodge Electric L. & P. Co. v. City of Ft. Dodge, 89 N. W. 7; Jones v. City of Portland, 35 Or. 512, 58 Pac. 657; Barber Paving Co. v. City of Denver, 72 Fed. 336; Kearney v. City of Covington (1 Met.), 58 Ky. 339; City of Mankato v. Barbour Paving Co., 142 Fed. 329, 347; Chambers v. City of St. Joseph, 33 Mo. App. 536; Lansing v. Van Gorder, 24 Mich. 455; Little v. City of Portland, 37 Pac. 911; Commercial Nat. Bank v. City of Portland, 33 Pac. 532; Bank of Scranton v. City of Scranton, 57 Atl. 770; O'Hara v. City of Scranton, 54 Atl. 713; Pine Tree Lumber Co. v. City of Fargo, 12 N. D. 360, 96 N. W. 357; Rogers v. City of Omaha, 82 Neb. 118, 117 N. W. 119, 120.]

Under this same principle a city is held liable for failure to perform some collateral or precedent duty, the failure to do which prevents the contractor from doing or completing the work or makes any tax bills issued therefor invalid. [2 Dillon on Municipal Corporations (5 Ed.), sec. 827, p. 1255 (2).] Such are the cases of Chambers v. City of St. Joseph, 33 Mo. App. 536; Ash & Gentry v. Independence, 79 Mo. App. 70; Oster v. City of Jefferson, 57 Mo. App. 485; Steffen v. City of St. Louis, 135 Mo. 44, 36 S. W. 31.

This is a different kind of liability than was discussed in the cases of Keating v. City of Kansas, 84 Mo. 415; Wheeler v. City of Poplar Bluff, 149 Mo. 36, 49 S. W. 1088; Cotter v. Kansas City, 251 Mo. 224, 158 S. W. 52, and Likes v. City of Rolla, 184 Mo. App. 296, 167 S. W. 645. Those cases do not involve the question here at issue, to-wit, liability for refusal to issue proper tax bills for work done under a valid contract and which would be valid when issued. In those cases the contracts were void and any tax bills that could have been issued under the proceedings had therein would contain the same inherent infirmity as the ones already issued and the defect fell within the risks of illegality and invalidity assumed by the contractor. Here the tax bills would be valid if properly issued, but the city refuses to issue the same. The liability is in the nature of tort, the common-law action of case, and not on contract.

The authorities, however, are divergent as to when and under what facts the contractor may hold the city directly liable in damages for refusing or neglecting to issue proper tax bills. That mandamus to compel the issuance of proper tax bills is a proper and adequate remedy in a case where the city has the power and it is its duty to do so and the tax bills when issued are, valid, as in the present case, is conceded by all the authorities. [Farrell v. City of Chicago, 198 Ill. 558, 65 N. E. 103; City of Pontiac v. Pav. Co., 94

Fed. 65, S. C. 96 Fed. 679.] Whether under such facts a suit for damages against the city is a concurrent remedy is a point on which the authorities differ. We think, however, that it will be found that the best considered cases, where this point was actually before the court, hold that where the contractor has an adequate remedy by mandamus he will be restricted to that remedy. Where such remedy is not availing or adequate the city can be held personally liable in damages. On this point 2 Page & Jones on Taxation by Assessment, sec. 1518, says: "In some cases it has been held that if a public corporation has power to levy an assessment, but omits or neglects to levy a valid assessment, the remedy of the contractor is neither tort nor contract, but the sole remedy is mandamus to compel the public officials to take the steps necessary to the levy of a valid assessment. . . . In other cases the right of the contractor to maintain mandamus has been recognized, but it is said that the contractor may sue in mandamus or in case; while it has elsewhere been held that if the public corporation has merely failed to levy the assessment the contractor's remedy is mandamus, while if it has *disabled itself from performing* by such action on its part as makes the assessment void, or if it refuses to perform, the contractor's remedy is an action *ex contractu* against the city." In 2 Dillon on Municipal Corporations (5 Ed.), sec. 827, pages 1253-4, this language is used: "When the claim of the contractor to relief is not founded upon the impossibility of the levying an assessment, but upon the *express refusal* of the city to perform its duty in that respect, the appropriate remedy of the contractor has been held to be by *mandamus* to compel the city to act, and not by an action to recover damages, or the contract price by way of damages, for a breach of the contract. . . . It is also to be observed that in some recent cases, where the right of the contractor to recover has been

sustained, the courts have laid particular emphasis upon the fact that it was no longer *within the power* of the city to make the assessment available to the contractor, and that has usually been assigned as one of the principal reasons for sustaining the liability, but without indicating any opinion on other and cognate questions. In other words, a disposition has been evinced on the part of some courts to limit the right of the contractor to enforce a general liability on the part of a city to those cases in which the contractor is absolutely without other remedy, although he has performed his contract with the municipality.'' The following cases will be found to sustain this position. [City of Alton v. Foster, 207 Ill. 150, 69 N. E. 783, 788; City of Pontiac v. Paving Co., 96 Fed. 679, 36 C. C. A. 88, 48 L. R. A. 326; People ex rel. Ready v. City of Syracuse, 144 N. Y. 63, 38 N. E. 1006; Foster v. City of Alton, 173 Ill. 587, 51 N. E. 76; German Sav. Bank v. City of Spokane, 17 Wash. 315, 49 Pac. 542; Weston v. City of Syracuse, 158 N. Y. 274, 43 L. R. A. 678, 682; Crawford v. Mason, 123 Iowa, 301, 98 N. W. 795; Farrell v. City of Chicago, 198 Ill. 558, 65 N. E. 103.] There are strong cases to the contrary. Many of them are what may be termed special fund cases where the city not only undertakes to levy assessments on the benefited property but to collect same into a special fund out of which the contractor is to be paid. In such cases the city's obligation to the contractor is much stronger and more direct than in this case. Such is the case of Rogers v. City of Omaha, 82 Neb. 118, 117 N. W. 119.

Under these authorities the plaintiff here should be restricted to his remedy by mandamus, since it is conceded that such remedy is adequate in that the city has power to issue corrected tax bills which will be valid and collectable and has done no more than decline to exercise that power. We' find no Missouri

cases holding to the contrary and none sustaining this view, unless it be the memorandum opinion in Carroll v. City of St. Louis, 5 Mo. App. 583. As we have already noted, most of the Missouri cases cited and relied on by plaintiff are those where the city failed to perform some collateral or precedent act preventing the doing of the work and rendering it impossible to issue valid tax bills. In none of them did the contractor have an adequate remedy by mandamus. What was said in Barber Pav. Co. v. Hayward, 248 Mo. 280, 287, 154 S. W. 140, as to the liability of the city for failure to issue tax bills was said in the course of argument and in no way discusses the remedy. Fisher v. City of St. Louis, 44 Mo. 482, went off on a question of pleading rather than on the merits as to this point. The restriction as to the nonliability of the city in that case seems to have been purely contractual and the city was held to be secondarily, if not primarily, liable *on the contract.* In speaking of this case in Oster v. City of Jefferson, 57 Mo. App. l. c. 494, the court said: ''The course of legislation since the decision of the *Fisher case* has been almost uniformly after the manner of the Kansas City charter exempting the city from this *secondary* liability, because it was conceded that without such restrictions the municipalities would be held as *guarantors* to the validity of such special assessments.'' See also what is said of the Fisher case, and the different constitutional and statutory provisions now prevailing, in Cotter v. Kansas City, 251 Mo. 224, 229, 158 S. W. 52. What is there said casts doubt on the liability of the city in damages in any event and would make mandamus the sole remedy. It should be noted, however, that neither the statutes here involved, section 9400, et seq., Revised Statutes 1909, nor the contract in question contains any express provision that the city shall be liable ''in no event and in no manner whatever'' as in that case.

The rule we adopt, though not without hesitation, commends itself as being in keeping with the policy of legislation in this State to exempt municipalities from all liability on special tax bills and compel the contractor to look to the tax bills alone for his pay. It is in accord with the practice in like cases in this State. It is true that the city, on the facts here presented, ought to have issued these tax bills and should not have compelled the contractor to bring suits of any kind to enforce his rights. The general tax payers of the city are, however, the persons most interested and ought not to be burdened with this expense, except as a last resort. It is contemplated by both parties to the contract when improvements of this character are made that the cost thereof shall not fall on the general public or be paid out of the general revenue but that it shall be assessed against the property improved which derives the greatest benefit therefrom, and so long as it is possible for the parties to carry out this original intention and contemplation the law should require that they do so and not shift the burden on other shoulders than provided for in the contract. While it is true that the duly elected municipal officers are the agents of the people and the municipality, at the same time they are elected for a certain period, and where they fail to carry out the will of the people, in the absence of some flagrant act, they cannot be charged or brought to respond to the will of the people except at election periods, which in many cases is a long time after their neglect or failure to act in the particular instance has occurred. The city, as a principal, therefore, is not in as advantageous a position with reference to the control of its officers and agents with reference to an act or failure to act, as in this case, as is the ordinary principal who can and may discharge the agent who fails to do his bidding. This condition should have weight in determining the question.

The plaintiff should, as he could, have pursued the remedy of mandamus and for failure to do so this cause will be affirmed.

*Farrington, J.,* concurs. *Robertson, P. J.,* concurs in the result.