## DES MOINES & MISSISSIPPI LEVEE DISTRICT NO. 1 v. CHICAGO, BURLINGTON & QUINCY RAILROAD COMPANY, Appellant.

### Division One, February 29, 1912.

1. PARTIES: Levee District: Attaching Railroad: Board or District as Plaintiffs. The levee district, and not the board of supervisors, is the proper plaintiff in a proceeding in a circuit court, under the Act of 1907, to have the right of way and roadbed of a railroad company benefited by the levee included within the district.

2. **LEVEE DISTRICT: Railroad Property: Constitutional: Charter Powers.** The law authorizing railroad property to be brought in and made a part of a levee district, if its property is in fact benefited, is constitutional. To require a railroad company to help maintain a levee district is not to require it to do things in violation of its charter. The assessment of benefits are justified under the police power rather than the taxing power; and a law which, in the exercise of that police power, imposes on a railroad corporation only what it imposes on an individual, is not unconstitutional.

3. ————: ————: **For Benefits for Work Already Done and Paid For.** The Legislature has no power to direct that the properties of a railroad benefited by a levee be included in the district and be assessed for work already done and paid for before the property is taken into the district. That part of the Act of 1907, Laws 1907, p. 336, is unconstitutional. The law should at least be limited to benefits to accrue after the lands are brought into the district, or to benefits accruing by reason of work done at the time the railroad's land is taken in but not yet paid for. But in construing this limitation the issuance of bonds should not be considered as being payment for the work already done, since the payment of the bonds would be the payment contemplated. The law can authorize the bringing into the district of new territory benefited by the levee, and it can authorize the assessments of benefits thereon to pay for improvements to be made, or already made and not paid for as the work progressed, or at the time the new territory is added, and to that extent the Act of 1907, Laws 1907, p. 336, is valid, but beyond that it is not valid.

Appeal from Clark Circuit Court.—*Hon. Charles D. Stewart,* Judge.

REVERSED AND REMANDED.

*O. M. Spencer, F. T. Hughes* and *Palmer Trimble* for appellants.

(1) The statute was passed after the railroad had been constructed and was an attempt to take from it just that much property and thereby impaired the obligation of the contract and violated both the State and Federal Constitutions. Cooley's Const. Lim., p. 721; Sturges v. Carter, 114 U. S. 519; Bailey v. Railroad, 4 How. (Del.) 389; Bridge Co. v. State, 18 Conn.

53; Railroad v. Chappel, 124 Mich. 72; People v. Railroad, 52 Mich. 277; Kinnie v. Bare, 68 Mich. 625; Re Cheeseborough, 78 N. Y. 232. And the doctrine is supported by the decision of this court in Drainage Dist. v. St. Louis, — Mo. —. Where the question is raised as to the power of the State in such cases this court says that the police power of the State may be invoked to make such lands fit for use, productive and habitable. Most certainly the police power of this State was not invoked in the Act of 1907 to make this railroad habitable or fit for use. This railroad was chartered by the State of Illinois and impliedly so by this State, when it came in with its railroad, for the safe and convenient carriage of freight and passengers and it became obligated at its own expense to keep its right of way, track and transportation machinery in the highest possible degree of safety for such purposes, and it has the right to use all or so much of its revenues therefor. It did not agree to go in partnership with any drainage district to keep the latter's lands dry for any help back by such drainage district in keeping water off its track. This would necessarily change the relations of the railroad to the public and in so far transfer these duties to the drainage district. Suppose in such cases as shown by this testimony the levee should break and cause damage to shippers and passengers which would not otherwise have been caused, would not the railroad and drainage district be liable for such damages as being themselves a part of the drainage districts? These are important questions and go to show that the taking a railroad in as a part of a drainage district is a matter entirely foreign to the purpose for which the railroad was formed and that in no event should a railroad be a party to such undertakings. It would hardly be contended that a number of railroads owning right of way and depot grounds could form a levee or drainage district to keep the water off their lands and take in a lot of farm

lands and make them help bear the costs, and yet the converse of this is just what is proposed by this law and proceedings. (2) Tax is a liability created by statute. City of St. Louis v. Newmons, 45 Mo. 138; Turner v. Burns, 42 Mo. App. 94; Moberly v. Hassett, 127 Mo. App. 11. There can be no tax where there is no law imposing it. There is no implied obligation to pay taxes. They are not contractual obligations, and this is especially so where a local tax is sought to be imposed for the especial benefit of the few. Every dollar's worth of property in the State stands absolutely exempt from tax unless there is a statutory law imposing it, so then you can not go back with a law and tax property which before that time was exempt any more under section 14, article 2, of the Constitution of this State than you could pass an *ex post facto* law as to crimes and their punishment. Cases supra; Louisville Water Co. v. Commonwealth of Kentucky, 170 U. S. 127; Waln v. Beverly, 55 N. J. L. 544; Livingston v. Railroad, 60 Mo. 515. This law would send the assessing board as far back as the organization of this district, probably in the ninetys, and to charge it and its railroad with a debt and lien on its property, without any question as to the thousands of dollars damages done to it, as shown in this evidence by the levee company, and to a time when even if the law had included the railroad and had the taxes been then properly assessed, such taxes would have been barred by the limitation laws of this State. Moberly v. Hassett, 127 Mo. App. 11. (3) Retroactive acts are prohibited by the Constitution of Missouri, sec. 15, art. 11. Under this Constitution (and the Constitution of the United States as well) the Legislature cannot go back and create or impose a tax or assessment on this defendant where during the time such property was exempt from such tax, such a law would be retrospective and void and deprive the party of his property without due process of law. It might go back and pro-

vide a remedy for collecting a tax where the property was legally bound but through some omission of the taxpayer or the taxing authorities the property was not legally assessed or the taxes paid, but not otherwise. Vanata v. Johnson, 170 Mo. 269; Livingston v. Railroad, 60 Mo. 516; State v. Voglessing, 183 Mo. 17; Waln v. Beverly, 55 N. J. L. 544; Sturgess v. Carter, 114 U. S. 511; Water Co. v. Commonwealth of Kentucky, 170 U. S. 127; Cook v. State, 101 Ind. 446; In re Pequest River, 42 N. J. L. 553.

*C. T. Llewellyn* for respondent.

(1)  The fact that this act (Sec. 5708, R. S. 1909) was passed after defendant railroad was built would not effect its constitutionality. The validity of a special assessment does not rest upon any theory of the assent of the property-owner, or upon any theory of contract between the property-owner and the public. 1 Page & Jones Taxation by Assessment, secs. 15 and 35. Every statute will be presumed to be constitutional till the contrary plainly appears and it is only when it manifestly infringes some provision of the Constitution that it can be declared void. Deal v. Mississippi Co., 107 Mo. 464; Kenefick v. St. Louis, 127 Mo. 1; North Park Dist. v. Scarritt, 127 Mo. 642; State ex rel. v. Mason, 153 Mo. 23; Endlick on Statutory Construction, sec. 283. The constitutionality of special assessments for public improvements has always been upheld in this State. Levee Co. v. Hardin, 27 Mo. 486; Eyerman v. Blaksbey, 78 Mo. 145; Morrison v. Morey, 146 Mo. 543; Construction Co. v. Railroad, 206 Mo. 172; Ross v. Kendall, 183 Mo. 338; Muir v. St. Louis, 180 Mo. 391; Moberly v. Hogan, 131 Mo. 19; Gibson v. Farrell, 106 Mo. 437; St. Louis v. Speck, 67 Mo. 403; Garrett v. St. Louis, 25 Mo. 505; Lockwood v. St. Louis, 24 Mo. 20; Newby v. Platt County, 25 Mo. 258; Land & Stock Co. v. Miller, 170 Mo. 240;

State ex rel. v. St. Louis, 67 Mo. 113.　And the Legis-
lature has a right to delegate the power to levy local
assessments.　1 Page & Jones, Taxation by Asst., secs.
244 and 245; French v. Barber Paving Co., 181 U. S.
324, 158 Mo. 534; Merchants Exchange v. Knott, 212
Mo. 616.　(2) There is no exemption from taxation
of railroad property in this State.　Even if such prop-
erty was expressly exempted from taxation for county
and state purposes, it would not be exempt from spec-
ial assessments for benefits.　Railroad v. St. Joseph,
39 Mo. 476; Railroad v. Passaic, 54 N. J. L. 340.　(3)
If the law making body, the Legislature, intended the
act to be retroactive when passed, it is so.　It is just
a question of the intent of the Legislature.　State ex
rel. v. Walker, 80 Mo. 613; State ex rel. v. Auditor, 52
Mo. 578; State ex rel. v. Auditor, 41 Mo. 25.　The act,
sec. 5708, only changes the method of procedure, in es-
timating benefits.　There is no vested right in any par-
ticular mode of procedure.　Railroads were subject to
assessment for the benefits before the passage of this
act, simply as so much land, so many acres.　Now this
act subjects them to assessment also, but benefits are to
be estimated by the mile instead of by the acre, there
is no vested right impaired.　Even if property was
once exempt from taxation, the Legislature may sub-
ject it afterwards to tax burdens.　Washington Univer-
sity v. Rowse, 42 Mo. 308.　But the Legislature or Con-
stitution of this State never has exempted railroads
from special assessments for benefits received.

GRAVES, P. J.—The plaintiff, "The Des Moines
and Mississippi Levee District Number One," under
its corporate name filed its petition in the circuit court
of Clark county, August 24, 1908, asking that the de-
fendant railway company be summoned into court to
show cause, if any it had, why its roadbed and right
of way should not be included in and made part of
the levee district and be assessed with such benefits

as it had received or might thereafter receive by reason of the improvements made and to be made by the said levee district. The petition was filed under the Act of 1907, and that portion relating to the course of proceedings reads:

"Before the proceedings had in this section shall be had, the board of supervisors shall file in the office of the clerk of the circuit court of the county in which such levee district is, or may be located, a petition reciting the organization of such levee district, the location of such railroad or railroads within its limits, the improvements made, or to be made, as shown by the report, maps, plans and profiles by the topographical survey of the topographical engineer and that the improvements already made or proposed to be made, will be of material benefit to such railroad company or corporation, and asking that such railway company or corporation be summoned into court to show cause why such railroad right of way, roadbed or track belonging to or owned by such railway company or corporation should not be included in and made a part of such levee district, and be assessed with such benefits as will, or have accrued to it by reason of the improvements made, or proposed to be made. Such railway company or corporation, after having been duly summoned, shall, on or before the third day of the term of court to which it may have been summoned to appear, file its objection or objections in writing, if any it may have, why it should not be included in and made a part of such levee district, and be assessed with benefits; and all such objections shall be heard by the court in the summary manner, without any unnecessary delay." [Laws 1907, p. 336.]

The petition follows the language of the statute. The cause upon the petition of defendant was removed to the Federal court, but upon motion of the plaintiff was remanded to the State court. The many points made appear fully in the answer which reads:

"Now comes the defendant Chicago, Burlington & Quincy Railroad Company, a corporation organized and existing under the laws of the State of Illinois, and for answer and objections to the matters and things stated in plaintiff's petition herein, states:

"That it has no knowledge or information sufficient to form a belief as to the allegations in plaintiff's petition contained, and therefore denies each and every one of said allegations therein contained.

"For further answer, defendant states that heretofore the defendant in this cause filed a petition and bond under the provisions of the act of Congress for the removal of causes from the State to the Federal courts. Said petition prayed to have said cause removed to the circuit court of the United States, Northern Division of the Eastern District of Missouri, and that defendant did file papers in said United States court, as provided in the order of removal, and that thereafter said United States court, upon the allegations of plaintiff, and by order of court, remanded said cause to this court, to all of which actions this defendant objected and excepted to the rulings of said court, and herein renews its exceptions and avers that the cause was properly removed from this court to said United States Circuit Court, and that the cause upon said removal vested in said United States court.

"For further answer, this defendant says that the alleged act of the Legislature of this State, known as section 8365-A of the Legislature of Missouri of 1907 is null and void as against the rights of this defendant in the premises herein, in this, that said act attempts to divest this defendant of its vested right in the premises, and to charge this defendant with a debt of the plaintiff corporation long since created by said corporation upon the property within its jurisdiction and has been in whole or in part paid by the said corporation.

"That said act deprives this defendant of its rights under the laws of this State existing at the time said drainage and levee district was formed, in this that defendant had no right to participate in or become a member of said levee district, nor have its property assessed with such equal proportion of alleged benefits as were necessary for the purpose therein in proportion and equally with all other owners of land in said levee district.

"Answering further, defendant says that said act attempts to make this defendant a part of said district without its consent and without any right under the laws when said district was formed to participate and become a part of said district when the same was being formed.

"Defendant, further answering, says that the laws relative to plaintiff's district give no authority to levy and collect taxes other than for the construction and maintenance of such levee district, and that, if defendant shall be assessed as prayed for in plaintiff's petition, the money so collected upon said assessment would not be thus collected for the construction or maintenance of said levee district, but for the sole and only use of the plaintiff herein, as profit or excessive money in its hands.

'Further answering, defendant says that said act is special and class legislation, and is void within the Constitution of this State and against the defendant in the premises herein.

"That said act is null and void within the meaning of the Fourteenth Amendment to the Constitution of the United States and seeks to take property of this defendant for the use of plaintiff without due process of law.

"Further answering, defendant says that the acts of plaintiff herein seek to deprive this defendant of the equal protection of the laws within the meaning

of the Fourteenth Amendment to the Constitution of the United States.

"Further answering, defendant says that. plaintiff seeks by judgment and order of this court to assess defendant for benefits which it is alleged defendant receives by said levee district, when, in law and in fact, it is the duty of the board of supervisors to appoint commissioners, disinterested freeholders of the county, and assess benefits accruing to each piece of land in whole or in part with the name of the owner thereof.

"Having fully answered and stated defendant's objections herein, this defendant asks to be dismissed with its costs in this behalf laid out and expended."

Reply was a general denial. The cause was tried and a decree entered for the plaintiff. The material findings and the decree proper read:

"That the right of way, roadbed and embankments owned by defendant corporation, occupied and used for railroad purposes, is within the limits of plaintiff levee district.

"That the board of supervisors of plaintiff levee district have filed in the office of the clerk of this court a petition reciting 'the organization of plaintiff levee district, the location of defendant's railroad within its limits, the improvement made or to be made as shown by the report, maps, plans and profiles by the topographical survey of the topographical engineer and the improvements already made and proposed to be made, will be of material benefit to defendant railroad corporation and asking that such railway corporation be summoned into court to show cause why such railroad right of way, roadbed and track owned by defendant corporation should not be included in and made a part of plaintiff levee district and be assessed with such benefits as have or will accrue to it by reason of the improvements made or proposed to be made.'

"That the improvements already made and to be made are and will be of material benefit to defendant. That all that part of defendant's right of way, road-bed and track where the same crosses the west line of section thirty-three, township sixty-five, range six west, in Clark county, Missouri, and running thence southeast, east and northeast to the east line of section five, township sixty-four, range five west, and from the crossing of Clay and Pine street in the old town of Churchville, now called Alexandria, south and south-west to Gridley street in Hill's addition to the old town of Churchville, now called Alexandria, all in Clark county, Missouri, is within the limits of plaintiff levee district.

"It is therefore ordered and adjudged by the court that the objections of defendant filed herein be and they are hereby overruled and that the defendant's railroad, right of way, roadbed, track and embankments owned by defendant railroad company within the limits of plaintiff levee district be and the same is included and made a part of plaintiff levee district, and included within said levee district."

From such decree defendant has appealed and urges all of the divers matters set out in its answer. The evidence is brief and largely formal and can best be taken with the discussion of the points urged for reversal.

I. The question of jurisdiction urged in the answer is not specially urged in the brief here. The Federal court has declined jurisdiction and the State court has proceeded to judgment. Counsel in oral argument stated that the question was injected in the answer to the end that it might be urged in the United States Supreme Court should the case reach that court. We shall not discuss the authorities on this question. In our judgment there was no error upon the part of the State court in proceeding under the facts of this case.

II. The defendant next assails the petition and urges that the district itself has sued, when the action should have been instituted in the name of the board of supervisors. The Act of 1907 (Laws 1907, p. 336) was an act amending article 7 of chapter 122, Revised Statutes 1899. The amendment consisted in adding a new section to be known as section 8365a. This sec- tion so far as it relates to the procedure we have set out in the statement. To more fully understand the pro- ceedings, the first part of the section had better be set out. That portion reads:

"If there is or shall be within the limits of any levee district now, or hereafter organized under this article, any right of way, roadbed or embankment be- longing to or owned by any railway company or cor- poration, occupied and used for railroad purposes, that is, or will be benefited by the construction of a levee or levees, dykes, embankments, ditches, drains or other improvements, the same shall be assessed with such benefits, and such assessment hall be made in the man- ner and by the means provided in section 8365 of this article, and the board of supervisors shall appoint an additional board of commissioners, three in number, possessing the same qualifications as prescribed in said section 8365, who shall proceed as therein provided, and such assessment shall be estimated by the mile in- stead of by the acre."

Following this is the language quoted in the state- ment. This levee district had been organized some years prior to the institution of the present action. It will be observed that the law reads: "Before the pro- ceedings *had* in this section shall be *had*, the board of supervisors shall file in the office of the clerk of the circuit court of the county in which such levee district *is*, or *may be located* a petition," etc. The word "pro- ceedings" hereinabove used evidently refers to what precedes it in this section, which language of the sec-

240 Sup.—40

tion we have hereinabove just quoted. That proceeding is "and such assessment shall be made in the manner and by the means provided in section 8365 of this article, and the board of supervisors shall appoint an additional board of commissioners, three in number, possessing the same qualifications as prescribed in said section 8365, who shall proceed as therein provided, and such assessment shall be estimated by the mile instead of by the acre."

In other words taking the whole section it appears that there first must be action by the circuit court to determine whether or not the railroad property can be assessed for benefits, and if this be found in the affirmative, then the other proceeding of actual assessment takes place. Now with this view of the situation can the levee district in its own name properly present the petition to the circuit court asking that court to determine the fact whether the property of the railroad company is subject to an assessment of benefits? Or must this petition be in the name of the board of supervisors? The law says that the board of supervisors shall file the petition, but it does not say how such petition shall be entitled. By the law these districts when organized are by the court declared and decreed to be public corporations of the State. [R. S. 1899, secs. 8362 and 8253; now R. S. 1909, secs. 5704 and 5499.] It will be seen that the levee act borrows much from the drainage act by express reference thereto. In the case at bar this public corporation is the real party interested. The board of supervisors are but the agents of the corporation. They are not made trustees for the corporation. We therefore are of the opinion that the suit was instituted properly.

But if it were not this matter was not challenged below either by demurrer or answer. The case proceeded there as if the proper parties were in court,

and it should so proceed here. The question is raised here for the first time.

II. It is also urged that it is violative of charter rights to require a railroad company to participate in the reclamation of lands. That to so require a railroad to help maintain a levee district would be to require it to do things not provided for in its charter. As stated in the oral argument, railroads were not organized to reclaim overflow lands. We are not impressed with this contention. The assessments of benefits are justified under the police power of the State rather than the taxing power. The theory is that the general welfare is promoted by this reclamation of overflow lands. The term "general welfare" includes the public health as well as other things which are the special wards of the police power of the State. We see no reason why the police power may not reach the corporation the same as the individual, and this too without violating constitutional rights. As to whether the corporation's property will be benefited is a question of fact to be determined, but if such fact is determined and it is properly held that the corporation's property will be benefited, the assessments of benefits will not deprive it of its property without due process of law, or be violative of any other constitutional provisions. It must be borne in mind that the sole question here involved is whether or not the finding that defendant's property has been or will be benefited is proper. The circuit court does not assess benefits. That is done later. Of course, if the law which authorizes the circuit court to determine that fact is unconstitutional, that would end this controversy, but we are not so impressed. The law as above indicated seems to be a just law, and violative of no constitutional provisions. The law simply imposes upon the corporation what it imposes upon the individual. But as said, this imposed duty has its origin in the police power of the

State. Nor do we think this holding in any way contravenes what was said in Sugar Creek Drainage District v. Turney, 235 Mo. 80.

This contention is therefore overruled. This of course only applies to the general proposition that a law authorizing the property of a railroad company to be brought into a levee district, if its property is in fact benefited, is constitutional. Other points are urged as to this particular law which we will discuss later.

IV.   But it is urged that although it be conceded that the Legislature in the exercise of the police power of the State could pass a law which would subject the property of railroads to the assessments of benefits in levee and drainage districts, yet this particular law is bad because it not only authorizes the bringing of the railroad property into the levee district after the district has been formed, but authorizes the assessments of benefits which had theretofore accrued to its property by reason of the work done, as well as the benefits to accrue for work to be thereafter done. This is the serious question in the case. The law speaks of assessing the property with "such benefits as will, *or have* accrued to it by reason of the improvements *made* or proposed to be made." The judgment in the case says: "That the improvements *already made* and to be made will be of material benefit to defendant." Both under the law and the judgment the property might be assessed with benefits for work done before the property was included in the district. These benefits are only assessed to pay for the improvements. The closing part of the decree in this case makes the property of defendant a part of the levee district. In fact the decree covers but two points, (1) that the property has been benefited by the work already done and will be benefited by work to be done, and (2) that such property is made a part of the levee district. Now the question is whether or not that part of the

law can stand, which authorizes the assessment of benefits for improvements made prior to the time defendant's property became a portion of the levee district. If the law is bad in this regard the judgment is likewise bad, because it follows the statute, and under it the commissioners appointed would no doubt assess for both the benefits by reason of improvements already made, as well as the benefits for improvements to be made.

For the plaintiff it is urged that the property of the defendant was already in the district, and the new law only changed the method of assessment from the acreage plan to the mileage plan. This contention is not borne out by the record. In the first place the judgment in this case decrees "that the objections of defendant filed herein be and they are hereby overruled and that the defendant's railroad, right of way, roadbed, track and embankments owned by defendant railroad company within the limits of plaintiff levee district, be and the same is included and made a part of plaintiff's levee district and included within said levee district."

The decree, therefore, shows that for the first time, by this proceeding, the property of defendant is made a part of the levee district. In oral argument it was stated that the defendant was originally made a party to the proceeding and that such fact was shown by the record. The only thing which we find is the judgment above discussed, and a certain admission made of record, which thus reads:

"By Mr. Llewellyn: I offer the articles of incorporation of the plaintiff which is a record of this court.

"Admitted in evidence in words and figures as follows:

"The respondent herein admits that the articles of incorporation referred to show that the plaintiff, respondent company, was organized as such drainage district in 1904, and that it built its levees and drain-

age districts in the year 1905, and that appellant makes no issue of law or fact on that question. The further agreed statement of facts was then made and entered of record in the court below in words and figures as follows:

"It is agreed that map of the Des Moines and Mississippi River Levees District showing the location of drainage ditches, as in evidence, which said map is called Exhibit 1. That the drainage ditch spoken of by the witness Snively starts a mile and a half northwest of the railroad and runs southeasterly to the railroad right of way on the north side of the railroad right of way and then parallel with the right of way east about two miles, then turns and crosses the right of way and the railroad track and goes south direct to Fox river; that this drain collects water from the northwest of the railroad where it starts and carries it down in said direction to Fox river. That the drain has an average width of twenty feet as the top and eight feet deep."

This falls far short of showing that the defendant was a party to the original proceeding, if that be a material question in the case. So that under this record, we are driven to answer the question: Is that portion of this law which purports to authorize the assessments of benefits for work already done, valid and binding? If so the judgment, *nisi*, may be right, if right on the facts shown; and if not so, then it is erroneous.

The exact question now confronting us was not discussed in either of our recent cases: Squaw Creek Drainage District No. 1 v. Turney, 235 Mo. 80, and In re Little River Drainage District v. Railroad, 236 Mo. 94.

As said in the preceding paragraph, these drainage and levee districts are organized by the State in the exercise of its police powers. In Morrison v. Morey, 146 Mo. l. c. 561, this court said: "It is a public

political subdivision of the State which the State has the power to create, under its police powers, and as such subdivision it exercises the prescribed functions of government in the district."

And in the same case, 146 Mo. l. c. 564, it is said:

"But while it is a public subdivision of the State and not a private corporation, it does not follow that the money to be raised from the landowners to carry out the objects intended, is a tax. It is an assessment which is justified by the benefit, public and private, conferred. The cost of the abatement of nuisances, for the construction of sewers or for the improvement of a street, may be assessed against the property benefited, notwithstanding the public and the owner are both interested. As a tax it would be unconstitutional, because not uniform (Const., sec. 3, art. 10), and because not in proportion to the value of the property (Const., sec. 4, art. 10), and because it is prohibited by the limitations of section 12 of article 10 of our Constitution, but being an assessment of benefits and in no sense a tax it is a constitutional exercise of the power of the State. [Lockwood v. St. Louis, 24 Mo. 20; Garrett v. St. Louis, 25 Mo. 505; Egyptian Levee Company v. Hardin, 27 Mo. 495; St. Louis to use v. Clemens, 36 Mo. 467; Uhrig v. St. Louis, 44 Mo. 458; Sheehan v. Hospital, 50 Mo. 155; Southern Hotel Company v. St. Louis County Court, 62 Mo. 134; Farrar v. St. Louis, 80 Mo. 379; St. Joseph v. Owen, 110 Mo. 445; Clinton to use v. Henry Co., 115 Mo. 557; Roosevelt Hosp. v. Mayor, 84 N. Y. 108; Duke v. O'Bryan, 39 S. W. 444; Nugent v. Levee Com'rs, 58 Miss. 197; State ex rel. v. Stewart, 74 Wis. 620; Dillon, Mun. Corp. (4 Ed.), sec. 755.]

"Assessments for the construction of levees to protect from overflow may be and usually are levied on lands bordering on the stream of water from which the danger is anticipated, and are properly benefits, as contradistinguished from taxes, and laws author-

izing them are constitutional.    [Crowley v. Copley, 2
La. Ann. 329; Sessions v. Crunkilton, 20 Ohio St. 349;
Yeatman v. Crandall, 11 La. Ann. 220; Wallace v.
Shelton, 14 La. Ann. 498; Bishop v. Marks, 15 La. Ann.
147; McGehee v. Mathis, 21 Ark. 40; Jones v. Board
Ald., 104 Mass. 461; Egyptian Levee Co. v. Hardin, 27
Mo. 495; Hagar v. Supervisors, 47 Cal. 231; People v.
Hagar, 52 Cal. 183; People v. Mayor, 4 N. Y. (Com.)
430, 495; Sears v. Cottrell, 5 Mich. 251; Emery v. Gas
Co., 28 Cal. 345.]''

This case has been continuously followed by this
court, and it is cited even in the late Turney case. But
grant it to be true that we have constitutional power
to incorporate levee districts, and constitutional power
to include railroad properties therein, and constitu-
tional power to assess benefits as against such rail-
road properties to pay the costs of the work, does
that authorize the Legislature to direct the assessment
of benefits for work already done and paid for before
the property is taken into the district? We think not.
It may be that to the extent that the improvements
had not been fully paid for the benefits could be as-
sessed, on the theory that as to that unpaid balance
all property legally in the district prior to payment
should pay for the benefits accruing by reason of the
work done in anticipation of the fund, but we shall not
go further. We should at least limit the law to ben-
efits to accrue after the lands are brought into the dis-
trict, or benefits accruing by reason of work done, at
the time the land is taken in, but not yet paid for by
an assessment of benefits on the whole district, includ-
ing the added lands.    In this sense the issuance of
bonds should not be construed as being payment for
the work. The payment of the bonds would be the pay-
ment contemplated. These assessments of benefits are
made to pay for improvements as they progress, and
not to repay for improvements already made and paid
for by other parties. The record does not disclose the

exact status of this levee district, but that portion of the law and the judgment which authorizes the assessment of benefits for improvements already made and paid for is beyond the pale of the constitutional power of the Legislature. In our judgment the Legislature cannot authorize the bringing in of new lands in a levee district and say that it must pay benefits for work already done and paid for by the district as formerly constituted. As we have seen it can authorize the bringing in of new territory and it can authorize the assessments of benefits, to pay for the improvements to be made. But when it goes to compelling benefits for improvements already paid for, the law goes a step too far. Such act is the unauthorized taking of private property. It is the taking of private property to recompense or repay the district for improvements made. It is not the assessment of benefits for the doing of an advantageous act toward the property, but for the repayment of an expenditure already made. The covering of an existing debt on the district for improvements made before the property is taken in can only be justified on the theory that the improvements are not in law considered as made until paid for by assessments. To hold that the assessments of benefits may be in proportion to the outstanding debt and the proposed new improvements is, in our mind going to the limit, and we will not go further.

From what is said it follows that the judgment *nisi* is too broad. Such judgment is therefore reversed and the cause remanded for further procedure in accordance with the views herein expressed. All concur.